1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10   KARAPET GASPARYAN,            )   Case No. CV 07-3268-PJW
                                   )
11             Plaintiff,          )
                                   )   MEMORANDUM OPINION AND ORDER
12       v.                        )
                                   )
13   MICHAEL J. ASTRUE,            )
     Commissioner of the           )
14   Social Security Administration, )
                                   )
15             Defendant.          )
     _____)

16

17        Before the Court is Plaintiff's appeal of a decision by Defendant

18   Social Security Administration ("the Agency"), denying his application

19   for supplemental security income ("SSI").  He asks the Court to

20   reverse the Agency's decision and award benefits or, in the

21   alternative, to remand the case to the Agency for further proceedings.

22   Because the Agency's decision that Plaintiff was not disabled is

23   supported by substantial evidence, the decision is affirmed.

                                   I.

25                          BACKGROUND FACTS

26   A.   Plaintiff's Personal History and Work History

27        Plaintiff was born on October 23, 1956, and was 50 years old at

28   the time of the administrative hearing.  (Administrative Record ("AR")

321.)  He was born in Armenia and completed eight years of school there.  (AR 113, 321.)  Plaintiff worked as a part-time laborer in Armenia.  (AR 113, 331.)  In 1989, he emigrated to the United States.  (AR 113, 321.)  Since then, he has worked as a driver and janitor.  (AR 58, 113.)  Plaintiff claimed in his benefits application that he has been unable to work since July 5, 2001, because of head and body injuries, depression, anxiety, mental disorder, headache, pain, dizziness, and loss of balance.  (AR 57.)

B.   Plaintiff's Medical Condition and Treatment

     In a June 24, 2005 report, Dr. Wayne Taubenfeld, Plaintiff's former treating psychologist, who met with Plaintiff on 14 occasions between April 2003 and June 2005, indicated that Plaintiff had been diagnosed with post traumatic stress disorder; major depression, recurrent, severe; headaches, severe; anxiety neurosis; nightmares; and panic disorder.  (AR 182.)  Dr. Taubenfeld indicated that these diagnoses were based on "neuro-psychological testing," mental status examination, background medical records, family testimony, and Plaintiff's "current emotional state."  (AR 182.)

     Dr. Taubenfeld reported that, in 1988, Plaintiff was buried alive under rubble in an earthquake in Armenia and spent eight days in a coma.  (AR 183.)  In 1990, Plaintiff dislocated his shoulder and was hospitalized.  (AR 183.)  In 1992, Plaintiff "sustained severe physical and emotional injury" in an automobile accident.  (AR 183.)  In part due to these traumas, according to Dr. Taubenfeld, Plaintiff is seriously impaired in intellectual functioning: his cognitive performance is "in the low range of borderline"; his insight, judgment, and concentration are impaired; and he has organic brain

2

damage as reflected in his poor performance on the Bender-Gestalt test.  (AR 183.)

Dr. Taubenfeld noted that Plaintiff had been taking "Prosac [sic], Xanax, Maxalt, Buspar, [and] Tylenol extra-strength [with] Codeine" for over four years, without any apparent improvement in his condition.  (AR 182, 183.)  Dr. Taubenfeld reported that, in fact, "there has been an increase in depression, insomnia, feelings of hopelessness as well as cognitive deterioration which includes loss of memory and concentration."  (AR 183.)

On June 24, 2005, Dr. Noubar Janoian, another of Plaintiff's treating physicians, reported that Plaintiff had been treated since July 2001 for, among other complaints, "[d]epressed mood, panic attacks, choking sensation, low energy level, tension, predominance of negative mood, difficulty to concentrate, and nightmares," as well as "[m]oderate memory impairment, decreased ability to concentrate, read, write or watch television."  (AR 186, 187.)  Dr. Janoian noted that Plaintiff was taking Prozac and Xanax.  (AR 188.)  Dr. Janoian diagnosed Plaintiff with depression, insomnia, and anxiety/panic disorder.  (AR 189.)  In Dr. Janoian's view, Plaintiff's "main disability is anxiety, frequent panic attacks, depression, which started as a result of [the] earthquake in 1988."  (AR 190.)  Dr. Janoian opined that Plaintiff "has lost hope for recovery and feels hopeless and helpless," and found that his prognosis was "guarded to poor."  (AR 190, 191.)

Treatment records from between March 31, 2004 and October 16, 2006 furnished by Dr. Janoian show that Plaintiff was seen on various occasions for depression, insomnia, and anxiety, and was prescribed Prozac and Xanax.  (AR 205-06, 210-11, 212-13, 220-21, 224-25, 228-29,

3

235-36, 245-46.)   In a chart note dated June 1, 2006, it was noted
that Plaintiff was being prescribed Seroquel, Buspar, and Prozac.  (AR
264.)   The report also noted that Plaintiff was "anxious, fearful,
negative for paranoia, depressed mood, irritable, obsessive-compulsive
behaviors, denies suicidal thoughts, experiencing sleep disturbance,
no picking behavior, has no mood swings, no prior psych.
hospitalization."  (AR 265.)

On November 30, 2005, clinical psychologist Dr. Rosa Colonna
conducted an evaluation of Plaintiff for the state department of
social services.  (AR 154-59.)  Dr. Colonna noted that Plaintiff
reported that he suffered from chronic depression and anxiety, that he
felt paranoid because people were talking about him and following him,
and that his memory was poor.  (AR 154.)  Plaintiff told her that his
problems first began after the 1988 earthquake and got worse after the
car accident in 1992.  (AR 155.)  Although Plaintiff stated that he
was receiving outpatient mental health treatment once every two months
and taking various medications, including Prozac, he told Dr. Colonna
that the treatment was only minimally helpful.  (AR 155.)  Dr. Colonna
noted that Plaintiff stated he drank approximately four shots of
alcohol per day and had attended AA meetings in the past.  (AR 156.)

Dr. Colonna reported that Plaintiff was "minimally cooperative"
and exhibited poor effort in testing.  (AR 154, 156.)  She reported
that his thoughts were organized in a linear fashion and that there
was no evident psychomotor slowing.  (AR 156.)  She assessed his
current intellectual functioning as low average and found his memory,
attention, and concentration mildly diminished.  (AR 156.)  She
reported that the results of Plaintiff's testing on memory malingering
were indicative of poor effort, and that his test results overall "do

4

not appear to be a totally valid estimation of the claimant's ability at this time." (AR 157.) Her diagnosis was: rule out alcohol abuse vs. alcohol dependence, dysthymia; personality disorder, dependent traits. She assessed a Global Assessment of Functioning ("GAF") score of 60.

Dr. Colonna concluded that Plaintiff would be able to understand, remember, and carry out "short, simplistic instructions without difficulty," but would have a "mild inability" to understand, remember, and carry out detailed instructions. (AR 158.) She found that Plaintiff would be able to interact appropriately with supervisors, coworkers, and peers, but recommended that he continue to obtain outpatient mental health treatment services owing to his long history of emotional disturbance accompanied by alcohol abuse. (AR 158.)

On May 2, 2006, Plaintiff went to the Los Angeles County Department of Mental Health. There, he filled out an initial contact form in which he stated that he suffered from anxiety, depression, headaches, and paranoid delusions. (AR 277.) Plaintiff reported that he was not a recovering alcoholic and that he was not currently abusing any substances. (AR 277.) Cecilia Garcia, a social worker who met with him, noted on an initial assessment form that Plaintiff had no history of psychiatric hospitalization or suicide attempts, and that he had been attending outpatient therapy with his psychologist, which ended when the therapist moved away. (AR 281, 310.) Ms. Garcia diagnosed major depressive disorder, assigned a GAF of 40, and referred Plaintiff to Dr. Larisa Levin for medical evaluation. (AR 286.)

5

1    Plaintiff was thereafter seen by Dr. Levin.  On May 22, 2006, she
2    noted that Plaintiff reported a history of being depressed, fearful,
3    and having poor sleep, and was currently on Prozac.  (AR 288.)  In a
4    medication note dated June 22, 2006, Dr. Levin noted that Plaintiff
5    was paranoid and fearful but denied suicidal ideation, and that he did
6    not experience anhedonia or panic attacks.  (AR 290.)  On July 27 and
7    September 27, 2006, Dr. Levin noted that Plaintiff should continue on
8    his current prescription medications, which were Prozac, Buspar, and
9    Seroquel.  (AR 291, 292.)

10    On January 10, 2007, after the ALJ issued his decision denying
11    Plaintiff's application, Dr. Levin completed a Mental Impairment
12    Questionnaire provided by Plaintiff's counsel.  (AR 315-18.)  In it,
13    Dr. Levin diagnosed Plaintiff with major depressive disorder, assigned
14    a GAF of 48, and noted that Plaintiff was continuing to experience
15    disturbing thoughts and feelings, despite his compliance with
16    medication.  (AR 315.)  In response to a question asking for a
17    description of the clinical findings that "demonstrate the severity of
18    [Plaintiff]'s mental impairment and symptoms," Dr. Levin wrote:
19    "[D]epressed mood, [illegible] isolation, paranoid ideations,
20    [illegible] to concentration, forgetful."  (AR 315.)  Dr. Levin noted
21    that Plaintiff did not have reduced intellectual functioning, but
22    opined that Plaintiff would have marked restrictions in activities of
23    daily living; marked difficulties in maintaining social functioning;
24    marked deficiencies of concentration, persistence, or pace; and noted
25    that Plaintiff had experienced three episodes of decompensation, each
26    of at least a two-week duration, within a 12-month period.  (AR 317.)
27    Dr. Levin opined that Plaintiff's impairments would cause him to be
28    absent from work more than four days per month, that his impairment

1  had lasted or would be expected to last at least twelve months, and

2  that Plaintiff was not a malingerer.  (AR 318.)[1]

3  C.   The Administrative Proceedings

4       On July 15, 2005, Plaintiff filed an application for SSI benefits

5  that was denied initially and upon reconsideration.  (AR 32, 37, 43,

6  45.)  An Administrative Law Judge ("ALJ") then held a hearing on

7  November 2, 2006, at which Plaintiff testified.  (AR 319-42.)

8  Plaintiff testified that he could lift only five to seven pounds, walk

9  no more than one or two blocks, and sit no more than two to three

10 hours at a time.  (AR 338-39.)  Plaintiff testified that he could not

11 sleep more than two to three hours at night without waking up because

12 of fearful thoughts and headaches.  (AR 339.)  He also testified that

13 at his last job he had to miss three or four days a month because he

14 was not feeling well.  (AR 339-40.)

15      On November 28, 2006, the ALJ issued a written decision, denying

16 Plaintiff's application.  (AR 16-23.)  Employing the Agency's five-

17 step sequential evaluation process, the ALJ found at step one that

18 Plaintiff had not engaged in substantial gainful activity since his

19 alleged onset date.  (AR 17.)  At step two, he ALJ found that

20 Plaintiff had severe medically determinable impairments consisting of

21 hypertension and osteoarthritis, but that Plaintiff's mental condition

22 of "mild dysthymia" was not severe.  (AR 18.)  At step three, he

23 concluded that these impairments did not alone or in combination meet

24 or equal a Listed impairment.  (AR 18.)

25

26

27

28      [1]  Plaintiff's physical impairments are addressed to the extent
   that they are put at issue in the Joint Stipulation.

1   At step four, the ALJ determined, consistent with the opinion of
2   examining internist Dr. Concepcion Enriquez, that Plaintiff possessed
3   the residual functional capacity to lift or carry up to twenty-five
4   pounds frequently and fifty pounds occasionally; and stand or walk for
5   six hours in an eight-hour workday.  (AR 21.)  The ALJ rejected the
6   opinions of Plaintiff's treating physicians that Plaintiff suffered
7   from a severe mental condition, and discounted Plaintiff's own
8   allegations that he was unable to work, finding that Plaintiff was not
9   fully credible.  (AR 19-21.)

10   Based on the opinion of examining psychologist Dr. Rosa Colonna,
11   who determined that Plaintiff would have no problems performing basic
12   work activities and only mild difficulties carrying out more detailed
13   instructions, the ALJ determined that Plaintiff had "no more than
14   minimal limitations in his ability to perform normal activities of
15   daily living, engage in social functioning, and perform activities
16   requiring concentration, persistence and pace."  (AR 19, 21.)  The ALJ
17   found, therefore, that there were no non-exertional limitations that
18   would prevent Plaintiff from performing the full range of medium work.
19   (AR 21-22.)  After determining that Plaintiff had no past relevant
20   work, the ALJ concluded at step five that Rules 203.25 and 203.18 of
21   the Medical-Vocational Guidelines (the "Grids") directed a finding of
22   "not disabled."  (AR 21, 22.)

23   On April 27, 2007, the Appeals Council denied Plaintiff's request
24   for review of the ALJ's decision. (AR 5.)  The Appeals Council
25   considered Plaintiff's arguments and additional evidence that he
26   submitted on appeal, but determined that the evidence did not warrant
27   a different result.  (AR 5-6.)  Plaintiff then filed the instant
28   Complaint.

8

II.

ANALYSIS

Plaintiff argues that the ALJ erred when he: (1) failed to offer cogent and legitimate reasons for rejecting the opinions of treating physicians Dr. Taubenfeld, Dr. Janoian, and Dr. Levin, regarding the severity of his mental disorders; (2) failed to find that Plaintiff's mental impairments were severe at step two of the sequential disability analysis; (3) improperly rejected Plaintiff's subjective complaints of pain and other symptoms; and (4) found that Plaintiff had no non-exertional limitations and, therefore, could perform a full range of medium work.  (Joint Stip. at 10-15, 27-30, 35-37, 41-44.)

A.    Standard Of Review

"Disability" under the regulations is defined as the inability to perform substantial gainful activity due to any "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  *See* 42 U.S.C. § 423(d)(1)(A).  The Court may overturn the ALJ's decision that a claimant is not disabled only if the decision is not supported by substantial evidence or if the decision is based on legal error. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006).  "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks and citation omitted).  It is "more than a mere scintilla but less than a preponderance." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (quoting *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).  This Court must uphold the ALJ's

9

1  conclusion even if the evidence in the record "is susceptible to more
2  than one rational interpretation." *Burch,* 400 F.3d at 679.
3  B.    The Agency Properly Rejected the Opinions of Dr. Taubenfeld, Dr.
4        Janoian, and Dr. Levin Regarding the Severity of Plaintiff's
5        Mental Impairments
6        In his first claim of error, Plaintiff argues that the ALJ erred
7  when he rejected the opinions of his treating doctors, Dr. Taubenfeld,
8  Dr. Janoian, and Dr. Levin, and relied, instead, on the opinion of
9  examining psychologist Dr. Colonna.  (Joint Stip. at 10-15.)  For the
10 following reasons, the Court concludes that Plaintiff's claim does not
11 warrant reversal or remand.
12       "By rule, the Social Security Administration favors the opinion
13 of a treating physician over non-treating physicians." *Orn v. Astrue*,
14 495 F.3d 625, 631 (9th Cir. 2007).  Nevertheless, where the treating
15 physician's opinion is contradicted by another physician, the ALJ may
16 reject the treating physician's opinion for specific and legitimate
17 reasons, supported by substantial evidence in the record.  *Id.*  As
18 explained below, the Court finds that the ALJ provided specific and
19 legitimate reasons supported by substantial evidence in the record for
20 rejecting the treating physicians' opinions.
21       As an initial matter, Plaintiff argues that Dr. Colonna's report
22 "is not contradictory evidence of impairment" and, therefore, "the
23 medical evidence is uncontradicted in proving Plaintiff's mental
24 disability."  (Joint Stip. at 13.)  The record, however, contradicts
25 this argument.  As set forth above, Dr. Taubenfeld diagnosed Plaintiff
26 with post traumatic stress disorder, major depression, recurrent
27 depressive episodes without psychotic features, anxiety neurosis, and
28 panic disorder.  (AR 182.)  Dr. Taubenfeld also opined that Plaintiff

10

was severely impaired in intellectual functioning, suffered from organic brain damage and psychomotor slowing, and there was no likelihood of his condition improving. (AR 183, 184.) Dr. Janoian diagnosed Plaintiff with depression and anxiety/panic disorder, concluding that Plaintiff would be prevented from leading a normal life and that his prognosis was guarded to poor. (AR 189, 191.) Dr. Levin diagnosed Plaintiff with major depressive disorder and found that Plaintiff would be markedly restricted in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace. (AR 315, 317.)

By contrast, Dr. Colonna specifically found that there was no evidence of psychomotor slowing and that Plaintiff's attention and concentration were only "mildly diminished." (AR 156.) Dr. Colonna diagnosed dysthymia, rather than major depression, in addition to possible alcohol abuse or dependence, and did not diagnose any form of anxiety disorder. (AR 158.) In addition, Dr. Colonna opined that Plaintiff would be able to understand, remember, and carry out simple instructions; make simple work-related decisions without special supervision; and interact appropriately with others. (AR 158.) Thus, Dr. Colonna's opinion contradicted Drs. Taubenfeld, Janoian, and Levin's opinions and the ALJ was tasked with determining which opinion to accept and which to reject.[2]

_____

    [2]  Though Dr. Colonna only examined Plaintiff on one occasion, her opinion constitutes substantial evidence to support the ALJ's decision because she conducted her own independent examination of Plaintiff, administered psychological testing, and relied on independent clinical findings in forming her opinion. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *c.f. Orn*, 495 F.3d at 632 (holding that conclusions of examining physician are not substantial evidence when the physician "relies on the same clinical

1    The ALJ accepted Dr. Colonna's opinion over Dr. Taubenfeld's
2  because he found:

3        [T]here are no treating records, progress notes or objective
4        findings to support [Dr. Taubenfeld's] diagnoses or even to
5        establish a treating relationship.  Dr. Taubenfeld has merely
6        given a generalized summary of neuropsychological testing
7        allegedly administered to [Plaintiff].  The undersigned finds
8        that this report is not entitled to the weight accorded a
9        treating source as there is no longitudinal evidence of mental
10       health care.

11  (AR 19.)

12    This was a legitimate reason for rejecting Dr. Taubenfeld's
13  opinion and it was supported by substantial evidence.  Although Dr.
14  Taubenfeld claimed to have seen Plaintiff on 14 occasions over two
15  years, his opinion was conveyed in a three-page letter, addressed "to
16  whom it may concern," which was not accompanied by any progress notes
17  or treatment records.  Nor did it provide details of the "neuro-
18  psychological testing" or "mental status exam" that Dr. Taubenfeld
19  claimed to be relying on, other than a cursory mention of WMS-R
20  results and of Plaintiff's "poor performance on the Bender-Gestalt
21  test."  (AR 182, 183.)  Absent any objective support for his opinion,
22  the ALJ was not required to accept it.  *See, e.g.,* *Thomas v. Barnhart*,
23  278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the

24
25
26
27  ─────────────────────────

28  findings as a treating physician, but differs only in his or her
    conclusions").

1  opinion of any physician, including a treating physician, if that
2  opinion is brief, conclusory, and inadequately supported by clinical
3  findings.").

4       Similarly, the ALJ properly rejected Dr. Janoian's opinion
5  regarding the severity of Plaintiff's mental impairments in favor of
6  Dr. Colonna's.  The ALJ noted that Dr. Janoian's records were
7  "indicative merely of general health maintenance and do not support
8  the poor prognosis and severe symptoms, diagnoses, and restrictions he
9  has implied."  (AR 20.)  The ALJ found that Dr. Janoian had "indicated
10 a variety of vague and unsupported diagnoses (many of which are merely
11 generalized descriptions of symptoms rather than actual medical
12 diagnoses)," and that his progress notes were "all on pre-printed
13 forms and indicate very cursory examinations with a brief recitation
14 of [Plaintiff]'s alleged symptoms and diagnoses, with few (if any)
15 significant objective findings."  (AR 18.)  The ALJ also noted that
16 Plaintiff's admitted history of alcohol abuse, which Dr. Colonna
17 referenced in her diagnosis, was "notably absent from Dr. Janoian's
18 report."[3]  (AR 19.)  Finally, the ALJ noted that Dr. Janoian did not
19 provide a residual functional capacity assessment, but merely stated
20 that Plaintiff's prognosis was "poor."  (AR 19.)

21      The record supports the ALJ's findings regarding Dr. Janoian.
22 Like Dr. Taubenfeld's, Dr. Janoian's records contain few, if any,
23 objective or clinical findings but, instead, consist of Plaintiff's
24 complaints regarding his depression and anxiety, and details of his

25

26      [3]  Dr. Janoian noted that Plaintiff claimed to have stopped
27 drinking alcohol four years before.  (AR 188.)  Other than this
   reference, Dr. Janoian did not address the issue of Plaintiff's
28 admitted heavy drinking, (*see*, *e.g.*, AR 282-83), in his report.

13

prescription medications.  (AR 220, 228, 258, 260.)  The ALJ was,
therefore, entitled to disregard Dr. Janoian's ultimate conclusion of
disability.  *Thomas*, 278 F.3d at 957.  The ALJ's finding regarding Dr.
Janoian's failure to address Plaintiff's past alcohol use is also
supported by the record.  (AR 148, 156, 158, 186-91.)  Moreover, the
ALJ correctly observed that Dr. Janoian's opinion was conclusory
because, among other things, it failed to provide a residual
functional capacity determination.  (*See* AR 186-91.)  This, too, was a
legitimate reason for rejecting it.  *Johnson v. Shalala*, 60 F.3d 1428,
1432-33 (9th Cir. 1995) (affirming ALJ's rejection of treating
physician's opinion that claimant was disabled where opinion was
unsubstantiated by medical documentation and did not include specific
assessment of functional capacity).

Plaintiff argues that the ALJ erred in rejecting Dr. Levin's
report on the ground that she only saw Plaintiff once.  (Joint Stip.
at 12.)  As Plaintiff points out, the record establishes that Dr.
Levin saw Plaintiff at least four times before the administrative
hearing on November 2, 2006.  (AR 287, 290, 291, 292.)  Moreover, even
if Dr. Levin had seen Plaintiff on only one occasion, that fact could
only be used to discount Dr. Levin's opinion, not to disregard it
entirely.  *See Benton v. Barnhart*, 331 F.3d 1030, 1035-39 (9th Cir.
2003) (declining to hold that doctor who may have seen patient only
once did not have "treating physician" status).  He contends that this
is especially so in view of the ALJ's reliance on Dr. Colonna, who
only examined Plaintiff once.  Though the Court agrees with Plaintiff
that the ALJ erred when he found that Plaintiff had only seen Dr.
Levin once, any error was harmless because the Appeals Council did
review Dr. Levin's submissions and correctly ruled that her work did

1  not alter the ALJ's ultimately finding that Plaintiff was not

2  disabled.  (AR 6.)  In reviewing the Agency's decision, this Court

3  must look not only at the ALJ's decision, but also at the Appeals

4  Council's decision.  *See Ramirez v. Shalala*, 8 F.3d 1449, 1452-53 (9th

5  Cir. 1993) (noting that both ALJ's decision and Appeals Council's

6  decision that considered additional material were subject to review on

7  appeal).  Looking at both decisions, the Court concludes that the

8  Agency correctly concluded that, even with Dr. Levin's submission,

9  Plaintiff had not established disability.

10      Plaintiff complains that the ALJ's findings were inconsistent

11  with Dr. Levin's subsequent report, prepared after the ALJ denied

12  Plaintiff's disability claim.  (Joint Stip. at 12, 15.)  There, Dr.

13  Levin reported, among other things, that Plaintiff had a GAF of 48 and

14  was not a malingerer.  But, again, the Appeals Council considered and

15  properly rejected Dr. Levin's opinion, finding it was not supported by

16  her treatment notes, which showed "no symptoms other than chronic

17  depression, made no mention of problems concentrating or socializing,

18  and reported few findings regarding the mental status examinations she

19  conducted."  (AR 6.)  Additionally, the Appeals Council found that Dr.

20  Levin provided no information to support her findings regarding

21  Plaintiff's memory, inability to concentrate, mood/affect, and

22  response to medication.  (AR 6.)  The Appeals Council also noted that

23  Dr. Levin did not identify the episodes of decompensation she referred

24  to in her final report and found that the limitations she assessed

25  were not consistent with Plaintiff's reported daily activities.  (AR

26  6.)

27      In sum, the Court finds that the Agency properly set out "a

28  detailed and thorough summary of the facts and conflicting clinical

15

1  evidence, stat[ed] [its] interpretation thereof, and ma[de] findings .
2  . . explain[ing] why [its interpretations], rather than the doctors',
3  are correct." *Orn*, 495 F.3d at 632; *see also Batson v. Comm'r, Soc.*
4  *Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (affirming ALJ's
5  rejection of treating physicians opinions based on "subjective
6  complaints without objective evidence," which were conclusory and
7  lacked supporting medical findings.)  For these reasons, Plaintiff's
8  claim that the Agency erred in relying on the examining doctor's
9  opinion instead of the treating doctors' opinions is rejected.

10  C.  <u>The ALJ Did Not Err in Determining at Step Two that Plaintiff's</u>
11      <u>Mental Impairments Were not Severe, and, Even if He Did Err, Any</u>
12      <u>Error Was Harmless</u>

13          In his second claim of error, Plaintiff argues that the ALJ erred
14  in determining at step two that Plaintiff's mental impairments were
15  "non-severe" and, more generally, in concluding that the impairments
16  were not disabling.  (Joint Stip. at 27-30.)  Plaintiff contends that
17  even Dr. Colonna's report established that Plaintiff suffers from
18  moderate mental impairments that would impair his ability to perform
19  work activities.  (Joint Stip. at 28.)  For the following reasons, the
20  Court disagrees.

21          At step two, the ALJ is tasked with identifying a claimant's
22  "severe" impairments.  An impairment is severe if it has more than a
23  minimal effect on an individual's ability to do basic work activities.
24  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); 20 C.F.R.
25  § 416.921(a).  The governing regulations define "basic work
26  activities" as "the abilities and aptitudes necessary to do most
27  jobs." 20 C.F.R. § 416.921(b).  Such abilities include
28  "[u]nderstanding, carrying out, and remembering simple instructions;

1  [u]se of judgment; [r]esponding appropriately to supervision, co-
2  workers and usual work situations; and [d]ealing with changes in a
3  routine work setting."  20 C.F.R. § 416.921(b)(3)-(6).  The step-two
4  inquiry is intended to be a "de minimis screening device." *Smolen*, 80
5  F.3d at 1290.

6      Under Social Security Ruling ("SSR") 85-28:

7      The severity requirement cannot be satisfied when medical
8      evidence shows that the person has the ability to perform basic
9      work activities, as required in most jobs. . . .  A determination
10     that an impairment(s) is not severe requires a careful evaluation
11     of the medical findings which describe the impairment(s) and an
12     informed judgment about its (their) limiting effects on the
13     individual's physical and mental ability(ies) to perform basic
14     work activities[.]

15     In addition, an ALJ "must consider the claimant's subjective
16  symptoms, such as pain or fatigue, in determining severity" at step
17  two.  *Smolen*, 80 F.3d at 1290.

18     Here, the ALJ carefully evaluated the medical evidence and
19  determined, relying primarily on Dr. Colonna's findings, that the
20  evidence established that Plaintiff's mental impairment was only a
21  slight abnormality which had no more than a minimal effect on his
22  ability to do basic work activities.  As discussed above, the ALJ's
23  rejection of the treating physicians' diagnoses of Plaintiff's mental
24  impairment was legitimate and supported by substantial evidence in the
25  record.  Thus, the ALJ was entitled to rely on Dr. Colonna's
26  assessment, in which she found that Plaintiff would be able to
27  "understand, remember, and carry out short, simplistic instructions
28  [and] . . . make simplistic work-related decisions without special

supervision[,]" and that Plaintiff "is generally socially appropriate
. . . and presents with the ability to interact appropriately with
supervisors, coworkers, and peers." (AR 158.) For these reasons, the
Court finds that the ALJ's step-two determination is supported by
substantial evidence in the record.

Even assuming, arguendo, that the ALJ erred at step two in
finding that Plaintiff's mental impairment was not severe, any error
was harmless. Had he found at step two that Plaintiff's mental
impairment was severe, the record supports his ultimate conclusion
that Plaintiff could perform work existing in the economy despite any
mental impairment. *See Stout*, 454 F.3d at 1055 (defining harmless
error as error that was "irrelevant to the ALJ's ultimate disability
conclusion.")

At step five of the analysis, the burden of proof shifts to the
Agency to demonstrate that there are a significant number of jobs in
the economy that an individual with the claimant's residual functional
capacity and experience can perform. *Osenbrock v. Apfel*, 240 F.3d
1157, 1162-63 (9th Cir. 2001). This burden may be met either by the
use of vocational expert testimony or, as here, by reference to the
Grids. *Osenbrock*, 240 F.3d at 1162. In this case, the ALJ correctly
determined that the Grids (Rules 203.25 and 203.18) directed a finding
of not disabled. (AR 22.) Thus, even if the ALJ had deemed
Plaintiff's mental impairment to be severe at step two, he still would
have concluded at step five, based on Dr. Colonna's opinion, that
Plaintiff could perform basic work activities, and, therefore,
Plaintiff's mental impairment did not constitute a significant
nonexertional limitation that precluded application of the Grids. *See
Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007) (holding that "a

1  step-two determination that a non-exertional impairment is severe does

2  not require that the ALJ seek the assistance of a vocational expert at

3  step five.")   Therefore, any error that the ALJ may have committed at

4  step two did not affect the ultimate conclusion that Plaintiff was not

5  disabled.   Thus, this claim does not warrant reversal or remand.

6  D.   The ALJ's Credibility Analysis Was Sufficiently Specific and

7       Supported by Substantial Evidence

8       In his third claim of error, Plaintiff contends that the ALJ's

9  finding that Plaintiff was not credible was erroneous and not based on

10  substantial evidence.   (Joint Stip. at 35-37.)   For the following

11  reasons, the Court disagrees.

12      An ALJ must undertake a two-step analysis when considering a

13  claimant's subjective symptom testimony.   *Smolen*, 80 F.3d at 1281.

14  First, he must determine whether the claimant has produced objective

15  medical evidence of an impairment which could reasonably be expected

16  to produce the symptoms alleged.   *Id.* at 1281-82.   Second, he must

17  determine the claimant's credibility as to the severity of the

18  symptoms.   *Id.* at 1282.   If the claimant produces objective medical

19  evidence of an impairment, shows that the impairment could be expected

20  to produce the symptoms alleged, and there is no evidence of

21  malingering, the ALJ can only reject the claimant's testimony

22  concerning the severity of the symptoms by citing specific, clear, and

23  convincing reasons for doing so.   *Id.* at 1283-84.

24      In evaluating Plaintiff's credibility, the ALJ was free to

25  consider many factors, including "ordinary techniques of credibility

26  evaluation,. . . unexplained or inadequately explained failure to seek

27  treatment or to follow a prescribed course of treatment, . . . and the

28  claimant's daily activities."   *Tommasetti v. Astrue*, 533 F.3d 1035,

19

1039 (9th Cir. 2008) (quoting *Smolen*, 80 F.3d at 1284).  As long as the ALJ's credibility finding is supported by substantial evidence in the record, the Court may not engage in second-guessing.  *Id.*

The ALJ determined at step two that Plaintiff suffered from hypertension and osteoarthritis.  (AR 22.)  At the administrative hearing, Plaintiff testified that he could not walk for a long time because of dizziness and pain.  (AR 327.)  He also testified that he could not lift more than seven pounds, walk further than one block, or sit for longer than two hours.  (AR 338-39.)

The ALJ found that Plaintiff's testimony was not credible for a number of reasons.  First, the ALJ noted that the medical evidence, including Dr. Janoian's report and notes, did not support Plaintiff's complaints of "almost total body pain and weakness . . . ."  (AR 20.)  Second, the ALJ found that Plaintiff's "deliberately poor performance on the consultative psychological study (found to be consistent with malingering) severely damage[d] his overall credibility."  (AR 20-21.)  Third, the ALJ noted that Plaintiff had never received any "formal ongoing mental health care subsequent to the May 2006 evaluation at a county health facility."  (AR 21.)  Fourth, the ALJ found that Dr. Taubenfeld's assertion that he treated Plaintiff between 2003 and 2005 to be entirely unsupported.  (AR 21.)  Fifth, the ALJ noted that Plaintiff had failed to establish any condition that would limit him to the extent alleged in his daily activities.[4]  (AR 21.)

_____

[4]  Although the ALJ did not discuss the first step when evaluating Plaintiff's credibility, by proceeding to the second step he implicitly found that Plaintiff's impairments--hypertension and osteoarthritis--could reasonably be expected to produce some degree of the symptoms alleged.

1   As discussed above, the ALJ was mistaken in finding that
2   Plaintiff had not received further mental health care after May 2006.
3   Other than that error in his justification for rejecting Plaintiff's
4   credibility, the rest of his reasons are specific, clear, and
5   convincing and are supported by substantial evidence.  For that
6   reason, his credibility finding is affirmed.

7   First and foremost, the ALJ properly relied upon Dr. Colonna's
8   finding that Plaintiff was malingering.  Dr. Colonna found that
9   Plaintiff was "somewhat apathetic toward psychometric testing" and
10  that his effort was poor.  (AR 156.)  She reported that Plaintiff's
11  results on the test of memory malingering were lower than the "minimal
12  cut-off score for just guessing" and that the results did not appear
13  to be a valid estimation of his ability.  (AR 157.)  The ALJ was
14  entitled to infer from Dr. Colonna's findings that Plaintiff was
15  malingering.  *See Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996)
16  (noting that "the ALJ is entitled to draw inferences logically flowing
17  from the evidence.")  Moreover, Plaintiff's poor effort during the
18  testing was itself a specific, clear, and convincing reason for
19  discounting his credibility.  *See Thomas*, 278 F.3d at 959 ("[The
20  claimant]'s efforts to impede accurate testing of her limitations
21  supports the ALJ's determinations as to her lack of credibility.")

22  The remaining reasons given by the ALJ to discount Plaintiff's
23  credibility concern the lack of objective medical evidence in the
24  record to support his subjective claims.  The record does not contain
25  any indication that Plaintiff was ever referred for surgery or
26  specialized treatment for his physical pain; rather, the treatment
27  records reveal that Plaintiff's condition was stabilized with pain
28  medication.  (AR 226-27, 230-31, 236-37.)  The ALJ could properly use

1   the evidence of conservative treatment and the lack of objective

2   medical evidence to support the extent of Plaintiff's alleged symptoms

3   as an additional reason to disregard his testimony.  *See Osenbrock*,

4   240 F.3d at 1165-66 (upholding ALJ's credibility determination in part

5   because evaluations revealed little evidence of disabling abnormality

6   of the claimant's spine); *Johnson*, 60 F.3d at 1434 (affirming ALJ's

7   credibility determination where conservative treatment suggested lower

8   level of pain and functional limitation).

9        In light of these specific, clear, and convincing reasons for

10   discounting Plaintiff's credibility, the ALJ's error regarding

11   Plaintiff's failure to receive mental health treatment after May 2006

12   was harmless.  *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d

13   1155, 1162-63 (9th Cir. 2008) (holding error harmless where ALJ's

14   error as to two proffered reasons for discounting credibility did not

15   negate validity of the ultimate adverse credibility finding).  Thus,

16   this claim does not warrant reversal or remand.

17   E.   The ALJ Was Entitled to Rely On the Grids In Finding That

18        Plaintiff Was Not Disabled

19        In his fourth claim of error, Plaintiff contends that the ALJ

20   erred in determining at step four that Plaintiff could perform the

21   full range of medium work and in relying on the Grids to find that

22   Plaintiff was not disabled.  (Joint Stip. at 41-44.)  Plaintiff argues

23   that the ALJ did not base his residual functional capacity

24   determination on all of the relevant evidence and erred in applying

25   the Grids because Plaintiff was "limited by significant non-exertional

26   limitations such as depression, anxiety or pain."  (Joint Stip. at 42,

27   43.)  This argument is without merit.

28

1   As detailed above, the ALJ considered all of the relevant record
2   evidence.   Furthermore, although Plaintiff argues that the ALJ was not
3   entitled to rely on the reports of examining physicians Enriquez and
4   Colonna because their reports did "not contradict the findings of
5   Plaintiff's treating doctors," (Joint Stip. at 42), Plaintiff fails to
6   specify what evidence the ALJ did not consider or to explain how Dr.
7   Enriquez' finding that Plaintiff could perform a full range of medium
8   work, (AR 152), was consistent with Dr. Janoian's conclusion that
9   Plaintiff had difficulty sitting, standing, or walking.[5]   (AR 190.)
10  Moreover, Plaintiff has not demonstrated why the ALJ could not rely on
11  Dr. Enriquez' opinion, which was based on his independent clinical
12  examination and test results, (AR 148-52), in making the residual
13  functional capacity determination.   *See Tonapetyan*, 242 F.3d at 1149
14  (holding that examining physician's opinion constituted substantial
15  evidence to support the ALJ's decision because it rested on "his own
16  independent examination" of the claimant).

17  As for Plaintiff's contention that the ALJ erred in applying the
18  Grids, the Court notes that the ALJ implicitly found in his adverse
19  credibility determination and in his reliance on the opinions of Drs.
20  Enriquez and Colonna that Plaintiff's non-exertional limitations were
21  not significant.   That finding is supported by substantial evidence in
22  the record.   Where, as here, there are no non-exertional limitations,
23  the ALJ is free to use the Grids.   *Osenbrock*, 240 F.3d at 1162.
24  Further, even if the ALJ had concluded at step two that Plaintiff's
25  mental impairment was severe, he still would have found at step five

26
27

28      [5]   The ALJ's consideration of the mental health evidence is
    addressed in ample detail above.

that Plaintiff's non-exertional limitations were not significant and would have applied the Grids to find that Plaintiff was not disabled. *See Hoopai*, 499 F.3d at 1076.  Thus, this claim does not warrant reversal or remand.

III.

CONCLUSION

For the foregoing reasons, the Agency's decision is affirmed and the case is dismissed with prejudice.


IT IS SO ORDERED.

DATED:     January 13, 2009.

_____
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\GASPARYAN, K 3268\MemoOpinion.wpd

24